SCHWALM v. WAYNE COUNTY & HOME SAVINGS BANK.

ESTOPPEL—FRAUD—EQUITY—MORTGAGES—PARTY RENDERING FRAUD POSSIBLE MUST SUFFER CONSEQUENCES.

Where vendees in a land contract providing for monthly payments agreed that vendors might mortgage the property conveyed up to a certain amount, and then, without looking up the record to see if vendors had exercised said right, continued payments to them beyond their interest which they accepted and fraudulently neglected to apply on a mortgage executed by them on said property within the terms of the contract, vendees are estopped from claiming, as against the mortgagee, who was not a party to the fraud, that the mortgage was void on equitable grounds, since it was their own conduct which created the conditions rendering the fraud possible.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted October 6, 1922. (Docket No. 46.) Decided December 5, 1922. Rehearing denied March 23, 1923.

Bill by John F. Schwalm and another against the Wayne County & Home Savings Bank for the cancellation of a mortgage.    From a decree dismissing the bill, plaintiffs appeal.    Affirmed.

*Charles C. Stewart* (*Fritz L. Radford,* of counsel), for plaintiffs.

*Archer F. Ritchie* (*W. V. Moore,* of counsel), for defendant.

STEERE, J.    Plaintiffs filed this bill to relieve certain premises they own in Detroit from a mortgage held by defendant, and have appealed from dismissal of their bill by the Wayne county circuit court, in chancery.    On June 26, 1913, plaintiffs purchased from Percy R. Upton and wife under land contract a house and lot in the city of Detroit known as 3994 Townsend avenue for the sum of $4,000.    The terms of payment were $500 down, $200 January 10, 1915, $30 July 26, 1913, and a like sum of $30 or more monthly thereafter until June 26, 1917, when all became due and payable, with interest at 6% on deferred payments.    The contract was drawn on a so-called Burton form which in general contained the customary provisions for sale of residence or improved property under land contract and also a provision that "(said first parties hereby reserve the right to mortgage said property in amount not to exceed two thousand (2,000) dollars)."

Upon execution of the contract plaintiffs at once made first payment and took possession of the premises upon which they have since resided.    Shortly thereafter Upton applied to defendant savings bank for a loan of $1,700 to be secured by a mortgage on said property.    After investigation the application was approved and a mortgage for that amount given the

bank by Upton and wife running for three years with interest at 6%, which was duly recorded.

Plaintiffs continued to directly pay the Uptons deferred payments on their contract as they fell due until February 26, 1918, and at their request thereafter remitted them payments, receipted for by mail, to Seattle, Washington, and Portland, Oregon. The total sum paid by them to the Uptons on their land contract amounted to $3,260.40, the last payment being made in December, 1918. Not long' thereafter plaintiffs received notice from Upton's attorney in Detroit not to remit any further payments to them as there was a mortgage of $1,700 which they had given on the property to care for and Upton had gone into bankruptcy, which plaintiffs claim was the first knowledge they received that the property had been mortgaged. They then took up the matter with the bank and were fully advised of its claim. The Uptons had kept up the interest on the mortgage, which was then past due, but had paid nothing upon the principal.

Beginning July 5, 1919, plaintiffs made payments to the bank for over a year and a half, "on account of interest and principal on the mortgage," as Mrs. Schwalm testified, when they consulted an attorney who found the payments they had made to the bank over and above the balance due on their land contract amounted to $191.71, which is undisputed. Plaintiffs refused to make further payments and filed this bill on February 1, 1921. Defendant's answer, filed April 7, 1921, showed yet due and unpaid upon its mortgage $900 principal with interest from February 8, 1921. In the meantime, upon what date is not shown, the Uptons had given plaintiffs a warranty deed of the premises.

Plaintiffs' grounds for relief from this mortgage are primarily based on the claim of equitable priority of lien rights as between the parties, in determining

which it is urged equity courts "are governed largely by considerations of fairness and justice." Pursuing the subject of priority of equities counsel cite and quote from various authorities, including 2 Pomeroy's Equity Jurisprudence (3d Ed.), § 678 *et seq.*, wherein the author states amongst other things that the doctrine is a development of the two legal maxims that "Where there are legal equities, the first in order of time will prevail; and where there is equal equity the law must prevail." Pointing out that notice is an important and sometimes a controlling element in determining priority of equities, counsel urge that plaintiffs as vendees in possession occupy a superior position since the bank had both actual and constructive notice of their rights while they had no notice whatever of its mortgage until years after it was given and these complications had developed.

There is no question but the bank was fully advised of plaintiffs' contract interest in the property when the mortgage was taken. The owners of the fee with whom they contracted so stated in their application for the loan, and the bank not only investigated the condition of the title but of the property itself after plaintiffs were in possession, but whether plaintiffs had notice of the mortgage at that time is fairly an issue of fact. They deny such knowledge. It is undisputed that they took possession in June, 1913, and shortly thereafter the application for a loan was made by the Uptons. The bank then sent its appraiser to investigate the property proposed as security. His testimony, supported by a report in writing made by him at the time, shows that he obtained permission from the parties in possession to look through the house on telling them he represented the bank and was there to approve the property for a mortgage; that he inquired if they were tenants and they replied they were contract purchasers.

Their rights, of which possession was notice, were those defined and limited by the contract of purchase which over their own signatures gave the vendors and fee owners *the right to mortgage said property* in amount not to exceed $2,000. In mortgaging it to defendant the Uptons did only what plaintiffs in the contract had given them the right to do. It contained no requirement that notice of the fact should be given plaintiffs either by the vendors or party to whom it was mortgaged.

When the mortgage for $1,700 was given and recorded no fraud actual or constructive was practiced upon any party in interest. Plaintiffs had then invested at most but $530 and yet owed nearly $3,500 to be met by a series of small deferred payments, as the date and terms of their contract giving the vendors authority to mortgage showed. The only element of fraud in the case was the conduct of the vendors in asking and receiving payments which plaintiffs trustingly continued to them beyond the $2,000 limit they were authorized to mortgage the property for, without taking care of the mortgage which they had given.

The rule of estoppel rather than that of priority of notice would seem most applicable where the vendees took their contract interest in property subject to the unqualified right of their vendors to incumber it up to a certain amount, and afterwards ignored that provision. Defendant was not a party to the contract, but relied and acted upon it as the contracting parties authorized. Plaintiffs were parties to the contract and created the conditions out of which this difficulty arose. They could easily have avoided it by examining the public records before their payments passed the $2,000 limit they had authorized. While it is true, as their counsel points out, that the recording laws operate in prospective, it is also true that their payments beyond the limits of the mortgage they

had authorized and now seek to avoid on equitable grounds were in prospective when it was given and recorded.   Under the circumstances disclosed by this record prior equities between these parties cannot be said to predominate in favor of plaintiffs.

In *Lines* v. *Weaver*, 220 Mich. 244, the vendees under a land contract consented that the vendor might place a "construction loan" not to exceed $7,500 on the property.   The vendor, Weaver, borrowed $1,800 of Burrusch secured by a mortgage upon the property. He totally defaulted in his contract with plaintiffs to erect a building on the property, appropriated the $1,800 and absconded.   Plaintiffs filed a bill involving certain complications with Weaver as to which relief was granted, and asking that the mortgage from Weaver to Burrusch be declared void and canceled, which was denied.   The following views dealing with that issue are well in point here:

"The loan was in accord with the agreement of the parties save in respect to the time the loan was to mature.   The real trouble was, Weaver was dishonest and irresponsible.   Plaintiffs selected him and invested him with certain powers which he has abused. It does not appear that defendant Burrusch aided or assisted him in abusing his trust."

The decree of dismissal will stand affirmed, with costs to defendant.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, and SHARPE, JJ., concurred.   MOORE, J., did not sit.